IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **JEREMY K. EDWARDS** § | |
| *Plaintiff*, § | |
| § | |
| v. § | **CIVIL ACTION NO. 6:23-cv-460** |
| § | |
| **LENN GUSA** § | |
| § | |
| *Defendant.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, JEREMY K. EDWARDS, Plaintiff, files this Original Complaint complaining of LENN GUSA and for causes of action will respectfully show unto the Court as follows:

### I.
### PARTIES

1. Plaintiff Jeremy K. Edwards is an individual residing in Dallas County, Texas.

2. At all times relevant to this lawsuit, Defendant Lenn Gusa was an employee of Texas Department of Criminal Justice ("TDCJ") Coffield Unit located at 2661 Fm 2054, Tennessee Colony, TX 75884. Defendant Gusa can be served through TDCJ or wherever he may be found.

### II.
### JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the cause of action accrued in the Western District of Texas.

## III.
## FACTS AND ALLEGATIONS

5. "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009); quoting, *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir.2006).

6. People who are incarcerated at the Coffield Unit are dependent upon the Texas Department of Criminal Justice and its employees to provide them with protection from violence at the hands of their fellow inmates.

7. At all times during his confinement in the Coffield Unit, Plaintiff Jeremy Edwards was classified as a convicted inmate who is afforded protection under the Eighth Amendment to the United States Constitution.

8. In June 2021, Edwards was incarcerated at the Coffield Unit.

9. Prison guards at the Coffield Unit are required to wear shields when escorting inmates from the high security wing to and from their cells.

10. The shield resembles a large black steel door.

11. The shield is utilized to protect inmates from violent attacks from other inmates.

12. Throughout the course of his incarceration, Mr. Edwards had been escorted from the high security wing with this shield.

13. On June 23, 2021, Mr. Edwards was escorted from his cell by Defendant Gusa for a dentist visit.

14. Defendant Gusa did not use a shield while escorting Mr. Edwards to and from his cell.

15. Defendant Gusa was aware that Mr. Edwards was housed in a high security wing.

16. Defendant Gusa was aware that the risk of danger to inmates being escorted in the high security wing was high and this was why a shield was required to protect them when escorting them through the wing.

17. Defendant Gusa was aware that by not using a shield to protect Mr. Edwards, he was leaving Mr. Edwards vulnerable to attack while being escorted in the high security wing.

18. Defendant Gusa was aware that Mr. Edwards did not have the ability to provide himself with a shield or to protect himself while being escorted through the high security wing.

19. Defendant Gusa was aware that other inmates presented a threat to Mr. Edwards as he walked without a shield through the high security wing.

20. When Mr. Edwards reached the cell neighboring his, inmate Israel Martinez threw a 22" paper pole with a 6" metal tip sharpened to a point, striking Mr. Edwards in the forearm.

21. The spear went straight through Mr. Edwards' right forearm and exited through his lower right abdomen.

22. Mr. Edwards reported that his pain was a 9/10 on the pain scale.

23. The spear had missed Mr. Edwards' liver by mere inches.

24. Mr. Edwards was seen by medical at the Unit and transported via EMS to Palestine Regional Medical Center.

25. Mr. Edwards' medical records show that he suffered a cortical fracture of his ulna, a wound to his right iliac crest, as well as an open wound to his abdominal wall due to this incident.

26. Below is a screen capture of TDCJ's Basic Releasable Information concerning the incident. This document confirms that Mr. Edwards was being escorted when inmate Israel Martinez threw a 22" paper pole with a 6" metal tip sharpened to a point, striking Edwards in the forearm. Further, Mr. Edwards retrieved treatment "above first aid."



**Texas Department of Criminal Justice**

**Emergency Action Center – Basic Releasable Information**

**Offender Name/TDCJ #:** Edwards, Jeremy TDCJ# 01846182

**Date/Time of Incident:** June 23, 2021, at approximately 10:15 hours

**Location of Incident:** Cell

**Injuries Sustained:**

**Known Disciplinary Action:**

**Basic Summary of Incident:**
Inmate Edwards was being escorted when inmate Martinez, Israel TDCJ #813413 threw a 22" paper pole with a 6" metal tip sharpened to a point, striking inmate Edwards in the forearm. Inmate Edwards was seen by medical, transported via EMS to Palestine Regional Medical Center, and received treatment above first aid. The weapon was removed and recovered. Inmate Edwards was returned to the unit and the Office of Inspector General was notified.

27. Defendant Gusa's deliberate indifference to Mr. Edwards' safety by failing to escort him while using a protective shield was the direct and proximate cause of Mr. Edwards' injuries, as he would have been physically protected from the assault by inmate Israel Martinez if Defendant Gusa had used a protective shield during escort, as he was supposed to do.

28. As a direct, proximate, and foreseeable result of Defendant Gusa's actions, Mr. Edwards suffered serious physical injuries, pain and suffering, mental and emotional anguish, and permanent physical disfigurement.

29. The Defendant was at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

### COUNT I

**FAILURE TO PROTECT**
**Violation of the Eighth Amendment Pursuant to 42 U.S.C. § 1983**
**Defendant Gusa**

30. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994).

31. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 114 S.Ct. at 1976–77.

32. The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. *Farmer*, 114 S.Ct. at 1984–1985.

33. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003); quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir.2002); citing *Farmer*, 511 U.S. at 832.

34. In particular, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other inmates. *Id*.

35. Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. See *id*.

36. A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Adames*, 331 F.3d at 512; citing *Farmer* 511 U.S. at 837.

37. A prison official "knows of" an excessive risk only if (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference." *Id*.

38. In order to be deliberately indifferent, a prison official must be subjectively aware of the risk. *Id*.; *See Farmer*, 511 U.S. at 839-40.

39. A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

40. In order to prove that an official is subjectively aware of a risk to inmate health or safety, a plaintiff inmate need not produce direct evidence of the official's knowledge. *Adame*, 331 F.3d at 512.

41. A plaintiff can rely on circumstantial evidence indicating that the official must have known about the risk. *Id*.; *See Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]").

42. The plaintiff can produce circumstantial evidence that the risk to inmate health or safety was so longstanding and pervasive that the official must have been aware of this danger. *Adame*, 331 F.3d at 512; *See Farmer*, 511 U.S. at 842–43.

43.     A prison official may not escape liability for deliberate indifference by showing that, while [s]he was aware of an obvious, substantial risk to inmate safety, [s]he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Farmer*, 511 U.S. at 843.

### 1. Defendant Gusa knew of and disregarded an excessive risk to Edwards' health or safety.

44.     Guards at the Coffield are required to wear shields when escorting inmates from the high security wing to and from their cells.

45.     Throughout the course of his incarceration, Mr. Edwards was escorted from the high security with a shield which resembles a big door.

46.     The shield is utilized to protect inmates from violent attacks from other inmates.

47.     On June 23, 2021, Defendant Gusa did not use a shield while escorting Mr. Edwards from his cell.

48.     When Mr. Edwards reached the cell neighboring his, inmate Israel Martinez threw a 22" paper pole with a 6" metal tip sharpened to a point, striking Mr. Edwards in the forearm.

49.     Because guards at the Coffield unit are required to wear shields when escorting inmates from the high security wing to and from their cells, Defendant Gusa was aware that by not wearing a protective shield while escorting Mr. Edwards to and from his cell that he was creating an excessive risk to Mr. Edwards' health or safety.

50.     Defendant Gusa's deliberate indifference to Mr. Edwards' safety by failing to escort him while wearing a protective shield was the direct and proximate cause of Mr. Edwards' injuries, as he would have been physically protected from the assault by inmate Israel Martinez if Defendant Gusa had used a protective shield during escort.

**2. Defendant Gusa was both aware of facts from which he could infer that a substantial risk of serious harm existed and actually made that inference.**

51. Defendant Gusa was aware that inmates in the high security wing are exposed to the risk of violent attacks from other inmates.

52. Guards at the Coffield are required to wear shields when escorting inmates from the high security wing to and from their cells.

53. Previously, Mr. Edwards had been escorted from the high security with a shield which resembles a big door.

54. The shield is utilized to protect inmates from violent attacks from other inmates.

55. Thus, Defendant Gusa was aware of facts from which he could infer that a substantial risk of serious harm existed when he escorted Edwards to and from his cell without a protective shield.

**3. Defendant Gusa failed to take reasonable measures to abate the risk.**

56. Defendant Gusa failed to take reasonable measures to abate the risk by failing to wear a protective shield while escorting Mr. Edwards from his cell despite being aware of the serious risk of harm he was placing Mr. Edwards while escorting him through the high security wing..

57. Defendant Gusa could have taken reasonable measures to abate the risk by simply wearing a protective shield while escorting Mr. Edwards from his cell.

58. Defendant Gusa's deliberate indifference to Mr. Edwards' safety by failing to escort him while wearing a protective shield was the direct and proximate cause of Mr. Edwards' injuries, as he would have been physically protected from the assault by inmate Israel Martinez.

59. As a direct, proximate, and foreseeable result of Defendant Gusa's actions, Mr. Edwards suffered serious physical injuries, pain and suffering, mental and emotional anguish, and permanent physical disfigurement.

## V.
## PUNITIVE DAMAGES

60. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

61. When viewed objectively from the standpoint of Defendant Gusa at the time of the occurrence, Defendant Gusa's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

62. As a direct, proximate, and producing cause of Defendant Gusa's reckless or callous indifference to Mr. Edwards' constitutionally protected rights, Edwards is entitled to recover punitive damages against Defendant in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

63. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

64. Mr. Edwards' injuries were a foreseeable event due to the requirement that guards at the Coffield are required to wear shields when escorting inmates from the high security wing to and from their cells and the fact that such a practice did occur prior to Gusa's failure to wear a shield on June 23, 2021, when he escorted Mr. Edwards from his cell.

65. Those injuries were directly and proximately caused by Defendant Gusa's deliberate indifference to Mr. Edwards' protection, health, and safety.

66. As a result, Mr. Edwards is entitled to recover all actual damages allowed by law. Mr. Edwards contends the Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to his constitutionally protected rights. Thus, Mr. Edwards is entitled to punitive damages against Defendant Gusa.

67. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

   a. Physical injuries;
   b. Physical pain and suffering;
   c. Permanent physical disfigurement; and
   d. Emotional distress, torment, and mental anguish.

68. Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEYS' FEES

69. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

70. Plaintiff respectfully requests a jury trial.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*

SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF